IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BERENICE GUERRERO,

         Plaintiff,

   v.

NCC BUSINESS SERVICES, INC.,

EQUIFAX INFORMATION
SERVICES, LLC,

EXPERIAN INFORMATION
SOLUTIONS, LLC, and

TRANS UNION, LLC,

         Defendants.

CIVIL ACTION FILE

NO. _____

## <u>COMPLAINT FOR DAMAGES</u>

### INTRODUCTION

1.   Plaintiff brings this action for damages against Defendant NCC Business Services, Inc. for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, as amended, and supplemental state law claims under the Georgia Fair Business Practices Act.

2.     Plaintiff brings separate claims against the nation's three largest credit reporting agencies: Equifax Information Services, LLC, Trans Union, LLC, and Experian Information Systems, Inc. [hereinafter collectively referred to as the "CRAs"], for violations of the FCRA, 15 U.S.C. §1681 *et seq.*, as amended.

## SUBJECT MATTER JURISDICTION

3.     Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, 28 U.S.C. §§1331 and 1337 (federal question jurisdiction).

4.     Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

5.     This court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law claims as they are so related to Plaintiff's federal question claim that they form part of the same case or controversy.

6.     Plaintiff is a Georgia resident within this Court's District and Division and is authorized by law to bring this action.

7.     NCC Business Services, Inc. ("NCC") is a corporation formed under the laws of the State of Florida and regularly conducts business in the State of Georgia, including within this District and Division.

8.    Plaintiff brings this action which is based on the acts and conduct of NCC which occurred within the Northern District of Georgia.

9.    NCC is subject to the jurisdiction and venue of this Court.

10.   NCC is a Florida Corporation, was registered with the Georgia Secretary of State during some relevant times, but their registered status was revoked by Georgia Secretary of State on December 7, 2016.

11.   Alternatively, NCC may be served by personal service upon its registered agent in Florida, to wit: Registered Agent solutions, Inc., 155 Office Plaza Dr., Suite A, Tallahassee, FL 32301.

12.   Alternatively, NCC may be served by personal service upon an officer or authorized agent at its principal place of business, in Florida, to wit: 9428 Baymeadows Road, Suite #200, Jacksonville, Florida, 32256.

13.   Defendant Equifax Information Services, LLC ("EQUIFAX") is a Georgia limited liability company that regularly conducts business in Georgia, and which has a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

14.   EQUIFAX may be served by personal service upon its registered agent in Georgia, to wit: Lisa Stockard, 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

15.   Defendant Experian Information Solutions, Inc. ("EXPERIAN") is an Ohio corporation that regularly conducts business in Georgia, and which has a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626-7037.

16.   EXPERIAN may be served by personal service upon its registered agent in Georgia, to wit: C T Corporation System, 289 South Culver Street, Lawrenceville, GA  30046-4805.

17.   Defendant Trans Union LLC ("TRANS UNION") is a Delaware limited liability company that regularly conducts substantial business in Georgia, and which has principal places of business in Chicago, Illinois and Crum Lynne, Pennsylvania.

18.   TRANS UNION may be served by personal service upon its registered agent in Georgia, to wit: The Prentice-Hall Corporation System, Inc., 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

19.   In the alternative, each defendant may be served by personal or substitute service pursuant to the Federal Rules of Civil Procedure and, as applicable, the laws of the several states.

20.   Other defendants may be discovered in the course of litigation, and

Plaintiff respectfully prays that the Court will permit the addition of later

discovered parties upon motion.

## FACTS COMMON TO ALL DEFENDANTS

21.   In or about July of 2013, Plaintiff moved out of her apartment at

Barrington Hills Apartments ("BARRINGTON HILLS") and returned

her keys to a management staff member at BARRINGTON HILLS who

went by the name of Angelica.

22.   Plaintiff left the apartment in good condition with only normal wear.

23.   Following her move, Plaintiff received no calls, letters, or other messages

from BARRINGTON HILLS relating to any amounts owed.

24.   Plaintiff's phone number had not changed following her move to a new

residence.

25.   Plaintiff received a collection letter from NCC dated October 21, 2013,

attempting to collect an alleged debt that they claimed she owed for

$303.32, which included a $100 charge for carpet cleaning, $200 charge

for "full kitchen floor replacement" and $3.32 in "rent."

26.   Plaintiff responded immediately upon receipt of NCC's initial collection

letter, disputing in detail all the charges the letter alleged she owed.

27.   Despite Plaintiff's letter, NCC persisted in trying to collect on the

disputed debt and ultimately reported the collection account to all three

of the CRAs.

28.   On April 23, 2014, Plaintiff filed a complaint against NCC in the Federal

District Court for the Northern District of Georgia, Atlanta Division

(Civil Action File No.: 1:14-cv-1206-SCJ-JSA) for violations of the Fair

Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting

Act ("FCRA") related to this account.

29.   Plaintiff and NCC agreed to a settlement of the ~~The~~ original case filed by

Plaintiff against NCC which was ~~then~~ voluntarily dismissed on May 21,

2014.

30.   As part of the agreement, NCC agreed to request the deletion of and

attempt to remove any tradeline it reported in relation to NCC Business

Services, Inc.'s Account Number 314****[.]"

31.   Following the dismissal, the NCC collection tradeline was removed from

any of Plaintiff's known credit files with the defendant CRAs, and there

were no other adverse accounts contained in any of Plaintiff's credit files.

32.   On or around October 5, 2017, Plaintiff received a copy of her credit

disclosure file from Defendants EXPERIAN, EQUIFAX, and TRANS

UNION, and was surprised to find that the NCC collection tradeline had reappeared with each of them.

33. NCC, after having successfully requested the Barrington Apartment information be removed from Plaintiff's credit file, subsequently rereported the previously deleted account information at some point prior to October of 2017.

34. In October of 2017, Plaintiff disputed the existence of the collection account reported by NCC with EQUIFAX.

35. On November 9, 2017, EQUIFAX responded to Plaintiff's dispute by sending her a letter stating that they had verified with NCC that the information was accurate.

36. In or around February of 2019, Plaintiff became aware that NCC was still furnishing the collection tradeline to EXPERIAN, so she disputed the account using EXPERIAN's online dispute system.

37. EXPERIAN verified that the NCC collection tradeline information was accurate on March 8, 2019.

38. Plaintiff attempted to call NCC on or around March 8, 2019 after receiving the EXPERIAN results, but NCC's representatives would not

speak to her since there had originally been an attorney listed on their file of Plaintiff.

39.  Plaintiff requested and received her credit disclosure files from the CRA Defendants EXPERIAN, TRANS UNION and EQUIFAX on March 22, 2019.

40.  The NCC collections tradeline was still being reported as of March 22, 2019 by EQUIFAX, EXPERIAN and TRANS UNION.

41.  On March 30, 2019, Plaintiff sent Defendants EQUIFAX, TRANS UNION, and EXPERIAN a dispute letter via certified mail.

42.  Defendants EXPERIAN, TRANS UNION, and EQUIFAX each received, and signed for a March 22, 2019 dispute letter from Plaintiff, which contained the following statement:

"The $303 collection account being reported by NCC is related to an alleged debt to my former apartment complex, Barrington Hills Apartments, for some disputed post move out damages. I left the apartment in perfect condition and had this documented. The apartment complex did nothing to pursue the debt other than to hire NCC. In 2014 I sued NCC for their improper collection efforts on this account.  We ultimately settled the case which led to a confidential settlement and release with them in which NCC unequivocally agreed to remove the entire collection tradeline it was reporting in relation to their account number [redacted account number]. Additionally, as part of the release, NCC had agreed to request its deletion should they ever receive notice from the CRA that I disputed it.  Although I cannot provide you with a copy of the agreement without NCC's express permission due to its confidential nature, if you contact them, you can discuss our settlement

and their agreement to delete the tradeline. I also give them permission to share the release with you."

43.    On April 8, 2019, EQUIFAX responded to Plaintiff's dispute letter by stating that:

> "[w]e verified that this item belongs to you.  This account has been updated.  THE FOLOWING FIELDS HAVE BEEN MODIFIED: *STATUS DATE *BALANCE DATE *ADDITIONAL INFORMAITON.  If you have additional Questions about this item please contact: [NCC]".

44.    To Date, EQUIFAX still reports the adverse NCC collection tradeline.

45.    EQUIFAX made no effort to contact Plaintiff to corroborate her allegations.

46.    EQUIFAX's failure to correct the NCC collection tradeline indicates that EQUIFAX does not maintain procedures to assure maximum accuracy of the information they maintain in consumer's credit files and report to third parties.

47.    On May 9, 2019, EXPERIAN responded to Plaintiff's dispute letter by stating that NCC verified the disputed information as being accurate.

48.  EXPERIAN made no effort to contact Plaintiff to corroborate her allegations.

49.  EXPERIAN's failure to correct the NCC collection tradeline and reaffirm the accuracy of it, indicates that EXPERIAN does not maintain procedures to assure maximum accuracy of the information they report.

50.  On April 18, 2019, TRANS UNION responded to Plaintiff's dispute letter by stating that NCC verified the disputed information as being accurate.

51.  To Date, TRANS UNION still reports the adverse NCC collection tradeline.

52.  TRANS UNION made no effort to contact Plaintiff to corroborate her allegations.

53.  TRANS UNION's failure to correct the NCC collection tradeline indicates that TRANS UNION does not maintain procedures to assure maximum accuracy of the information they report.

54.  The NCC collections tradeline is the only negative item or collection item currently reflected in Plaintiff's credit files with any of the three major defendant CRAs.

55.   Inclusion of the NCC information is having a significant adverse effect on Plaintiff's credit scores.

56.   Plaintiff's credit files with each CRA would be perfect absent this inaccurately and improperly reported negative collection tradeline furnished by NCC.

57.   The reporting of this adverse collection item has financially impacted Plaintiff and has caused her great emotional distress.

58.   Plaintiff has spent her valuable time and effort during the last several months trying to correct the false information which has been reported by the Defendant NCC and maintained and published to third parties by the CRA defendants EXPERIAN, EQUIFAX, and TRANS UNION.

59.   Plaintiff has incurred hard costs in certified postage for mailing letters to Defendants and some non-defendants.

60.   Plaintiff has complied with all conditions precedent to bring this action.

## FACTS RELATED TO DEFENDANT NCC ONLY

61.   NCC uses telephone communications in its business.

62.   NCC uses the mails in its business.

63.   The principal purpose of NCC's business is the collection of debts.

64. NCC regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, to another.

65. NCC is a debt collector as defined by the FDCPA.

66. Although NCC does substantial business in Georgia that affects Georgia residents, NCC does not maintain an office in Georgia.

67. Although NCC does substantial business in Georgia that affects Georgia residents, NCC does not keep assets in Georgia.

68. NCC received at least one automated consumer dispute verification ("ACDV") form from each of the Defendant CRAs.

69. Despite receiving the ACDVs, NCC did not conduct an adequate investigation with respect to the collection tradeline.

70. Despite receiving the ACDVs, NCC did not review all relevant information provided by Plaintiff to the CRAs.

71. Despite the inaccuracy of the collection tradeline, NCC did not report that the information was incomplete or inaccurate to the CRAs to which it furnished the information.

72. Despite the inaccuracy of the collection tradeline, NCC did not promptly attempt to contact the CRAs to modify the inaccurate collection tradeline;

delete the inaccurate collection tradeline; or permanently block the reporting of the inaccurate collection tradeline.

73. NCC sent a response to each of the ACDV forms it received from each Defendant CRA.

74. NCC has continued to furnish the BARRINGTON HILLS $303 collection account to Defendants EQUIFAX, EXPERIAN and TRANS UNION since at least September of 2017.

75. As a direct result of NCC's actions in reporting the collection tradeline, Plaintiff has suffered, and will likely continue to suffer, actual damages in the form of economic loss, denial of credit, lost opportunity to receive credit, interference with Plaintiff's normal and usual activities, damage to reputation, invasion of privacy, credit defamation, and emotional distress including anxiety, frustration, embarrassment, and humiliation.

76. Defendant NCC's actions were malicious and intentional and showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences or to the welfare of Plaintiff.

## FACTS RELATED TO CREDIT REPORTING AGENCY

## DEFENDANTS EQUIFAX, EXPERIAN AND TRANS UNION

## ONLY

77.   Defendants EQUIFAX, EXPERIAN and TRANS UNION are each a "consumer reporting agency" ("CRA") as defined by the FCRA. 15 U.S.C. § 1681a(f).

78.   At all times pertinent hereto, Defendants EQUIFAX, EXPERIAN and TRANS UNION were each a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

79.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

80.   At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

81.   Pursuant to the FCRA, Defendants EQUIFAX, EXPERIAN and TRANS UNION must each maintain and follow procedures which assure that the reports it sells meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

82.   Defendants EQUIFAX, EXPERIAN and TRANS UNION each failed in this case to maintain and follow procedures to assure the maximum

possible accuracy of Plaintiff's personal credit file and reports it provided to third-parties.

83.   Despite Plaintiff's efforts, Defendants EQUIFAX, EXPERIAN and TRANS UNION each never timely: 1) contacted the Plaintiff to follow up on, verify, or elicit more specific information about Plaintiff's disputes; 2) contacted any third parties that would have relevant information concerning Plaintiff's disputes; 3) forwarded any relevant information concerning Plaintiff's disputes to the entities originally furnishing the inaccurate information; or 4) requested or obtained copies of any documents from Plaintiff, BARRINGTON HILLS, or NCC.

84.   As of the date of filing of this Complaint, NCC is still furnishing the collection tradeline to one or more of the CRA defendants on their respective credit files maintained on Plaintiff.

85.   Despite Plaintiff's efforts, Defendants EQUIFAX, EXPERIAN and TRANS UNION have each deliberately, willfully, intentionally, recklessly or negligently failed to perform reasonable reinvestigations of the above disputes as required by the FCRA and failed to timely remove the inaccurate information.

86.  As a direct result of Defendants EQUIFAX, EXPERIAN and TRANS
     UNION's independent actions, Plaintiff has suffered, and will continue to
     suffer, actual damages in the form of economic loss, denial of credit, lost
     opportunity to receive credit, interference with Plaintiff's normal and
     usual activities, damage to reputation, invasion of privacy, credit
     defamation, and emotional distress including anxiety, frustration,
     embarrassment, and humiliation.

87.  At all times pertinent hereto, Defendants EQUIFAX, EXPERIAN and
     TRANS UNION were each acting by and through its agents, servants, or
     employees, who were acting within the course and scope of their agency
     or employment, and under the direct supervision and control of each of
     the credit reporting agencies.

88.  At all times pertinent hereto, the conduct of Defendants EQUIFAX,
     EXPERIAN and TRANS UNION, as well as that of its agents, servants,
     or employees, was intentional, willful, reckless, and in grossly negligent
     disregard for federal law and the rights of the Plaintiff herein.

## CAUSES OF ACTION

## COUNT ONE: FAIR DEBT COLLECTION PRACTICES ACT

## NONCOMPLIANCE BY NCC

89.     The acts of NCC constitute violations of the Fair Debt Collection

        Practices Act.

90.     NCC's violations of the FDCPA include, but are not limited to, the

        following:

91.     Engaging in conduct the natural consequence of which is to harass,

        oppress or abuse any person, in violation of 15 U.S.C. § 1692d;

92.     The use of any false, deceptive, or misleading representations or means

        in connection with the collection of any debt, in violation of 15 U.S.C. §

        1692e;

93.     The false representation of the character, amount, or legal status of any

        debt, in violation of 15 U.S.C. § 1692e(2)(A);

94.     Communicating, or threatening to communicate, to any person credit

        information which is known, or which should be known to be false, in

        violation of 15 U.S.C. § 1692e(8);

95.     The use of unfair or unconscionable means to collect or attempt to collect

        any debt, in violation of 15 U.S.C. § 1692f; and

96.     The collection of any amount that is not due per agreement or law, in

        violation of 15 U.S.C. § 1692f(1).

97.  As a result of NCC's actions, Plaintiff is entitled to an award of: 1) actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities; 2) statutory damages; and 3) an award of costs and attorneys' fees.

## COUNT TWO: FAIR CREDIT REPORTING ACT
## NEGLIGENT NONCOMPLIANCE BY NCC

98.  The FCRA requires that a furnisher of information, such as NCC, upon receiving notice of a dispute from a credit reporting agency, "conduct an investigation with respect to all the disputed information." The furnisher must review all relevant information provided to it by the credit reporting agency as part of the investigation. After conducting its investigation, the furnisher must inform the credit reporting agency of its results. If the furnisher finds the information is incomplete or inaccurate, or cannot be verified, it must modify, delete, or permanently block the reporting of the disputed information. 15 U.S.C. § 1681s-2(b).

99.  The policies and procedures of NCC do not ensure compliance with this provision of the FCRA.

100.   NCC negligently failed to comply with the furnisher requirements of the FCRA, including those requirements stated at 15 U.S.C. §1681s-2(b).

101.   As a result of NCC's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress ,and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681o(a)(1).

102.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2).

## COUNT THREE: FAIR CREDIT REPORTING ACT WILLFUL NONCOMPLIANCE BY NCC

103.   The FCRA requires that a furnisher of information, such as NCC, upon receiving notice of a dispute from a credit reporting agency, "conduct an investigation with respect to all the disputed information." The furnisher must review all relevant information provided to it by the credit reporting agency as part of the investigation. After conducting its investigation, the furnisher must inform the credit reporting agency of its results. If the

furnisher finds the information is incomplete or inaccurate, or cannot be
verified, it must modify, delete, or permanently block the reporting of the
disputed information. 15 U.S.C. § 1681s-2(b).

104.   NCC willfully failed to comply with the requirements of the FCRA,
including 15 U.S.C. §1681s-2(b).

105.   As a result of NCC's failure to comply with the requirements of the
FCRA, Plaintiff has suffered, and continues to suffer, actual damages,
including economic loss, denial of credit, lost opportunity to receive
credit, damage to reputation, invasion of privacy, emotional distress and
interference with Plaintiff's normal and usual activities, for which
Plaintiff seeks damages in an amount to be determined by the jury
pursuant to 15 U.S.C. § 1681n(a)(1).

106.   Plaintiff is entitled to an award of punitive damages in an amount to be
determined by the jury pursuant to 15 U.S.C. § 1681n(a)(2).

107.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR: GEORGIA FAIR BUSINESS PRACTICES ACT

## NONCOMPLIANCE BY NCC

108. NCC's violations of the FDCPA also constitute parallel violations of Georgia's Fair Business Practices Act, including, but not limited to, the use of unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce.

109. The conduct of NCC is the direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harms to the Plaintiff that are outlined more fully above and, as a result, Defendant NCC is liable to the Plaintiff for the full amount of actual, treble and exemplary damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT FIVE: BREACH OF CONTRACT BY NCC

110. Plaintiff and NCC entered into a settlement agreement in which NCC agreed to request the deletion of their collection tradeline to all credit reporting agencies.

111. NCC breached the contract by re-reporting the collection tradeline to each of the credit reporting Defendants EQUIFAX, EXPERIAN, and TRANS UNION.

112.    The breach of contract by NCC is the direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages, and harms to the Plaintiff, which are outlined more fully above and, as a result, Defendant NCC is liable to the Plaintiff for the full amount of actual damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT SIX: FAIR REPORTING ACT NEGLIGENT NONCOMPLIANCE BY DEFENDANT EQUIFAX

113.    The FCRA requires that credit reporting agencies (CRAs) such as, EQUIFAX, in preparing a credit report, "follow reasonable procedures to assure maximum possible accuracy of the information" in the report. 15 U.S.C. § 1681e(b).

114.    The FCRA requires that CRAs conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. CRAs must notify the source of the information of the dispute within five days. CRAs must provide the source with all relevant information received from the consumer. CRAs must review and consider all relevant information provided by the consumer in conducting

the reinvestigation. CRAs must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. CRAs must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. CRAs must send a consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

115.   The policies and procedures of EQUIFAX do not ensure compliance with these provisions of the FCRA.

116.   EQUIFAX negligently failed to comply with the requirements of the FCRA.

117.   As a result of EQUIFAX's failure to comply with the requirement of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities, for which Plaintiff seeks damages in an amount to be determined by a jury.

118.   Plaintiff requests attorneys' fees pursuant 15 U.S.C. § 1681o(a).

## COUNT SEVEN: FAIR REPORTING ACT WILFUL

## NONCOMPLIANCE AS TO DEFENDANT EQUIFAX

119.   Experian willfully failed to comply with the requirements of the FCRA,

including, but not limited to, 15 U.S.C. §§ 1681e and 1681i.

120.   As a result of EQUIFAX's failure to comply with the requirement of the

FCRA, Plaintiff has suffered, and continues to suffer, actual damages,

including economic loss, denial of credit, lost opportunity to receive

credit, damage to reputation, invasion of privacy, emotional distress, and

interference with Plaintiff's normal and usual activities, for which

Plaintiff seeks damages in an amount to be determined by a jury.

121.   Plaintiff is entitled to punitive damages in an amount to be determined by

the jury.

122.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT EIGHT: FAIR REPORTING ACT NEGLIGENT

## NONCOMPLIANCE AS TO DEFENDANT EXPERIAN

123.   The FCRA requires that CRAs conduct a reasonable reinvestigation of

any information that is disputed by a consumer to determine if the

information is accurate. CRAs must notify the source of the information

of the dispute within five days. CRAs must provide the source with all relevant information received from the consumer. CRAs must review and consider all relevant information provided by the consumer in conducting the reinvestigation. CRAs must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. CRAs must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. CRAs must send a consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

124. The policies and procedures of EXPERIAN do not ensure compliance with these provisions of the FCRA.

125. EXPERIAN negligently failed to comply with the requirements of the FCRA.

126. As a result of EXPERIAN's failure to comply with the requirement of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and

interference with Plaintiff's normal and usual activities, for which

Plaintiff seeks damages in an amount to be determined by a jury.

127.  Plaintiff requests attorney fees pursuant 15 U.S.C. § 1681o(a).


## COUNT NINE: FAIR CREDIT REPORTING ACT WILFUL

## NONCOMPLIANCE BY DEFENDANT EXPERIAN

128.  EXPERIAN willfully failed to comply with the requirements of the

FCRA, including but not limited to, 15 U.S.C. §1681e and 1681i.

129.  As a result of EXPERIAN's failure to comply with the requirement of the

FCRA, Plaintiff has suffered, and continues to suffer, actual damages,

including economic loss, denial of credit, lost opportunity to receive

credit, damage to reputation, invasion of privacy, emotional distress, and

interference with Plaintiff's normal and usual activities, for which

Plaintiff seeks damages in an amount to be determined by a jury.

130.  Plaintiff is entitled to punitive damages in an amount to be determined by

the jury.

131.  Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a)(3).


## COUNT TEN: FAIR REPORTING ACT NEGLIGENT

## NONCOMPLIANCE AS TO DEFENDANT TRANS UNION

132.   The FCRA requires that credit reporting agencies (CRAs) such as,
TRANS UNION, in preparing a credit report, "follow reasonable
procedures to assure maximum possible accuracy of the information" in
the report. 15 U.S.C. § 1681e(b).

133.   The FCRA requires that CRAs conduct a reasonable reinvestigation of
any information that is disputed by a consumer to determine if the
information is accurate. CRAs must notify the source of the information
of the dispute within five days. CRAs must provide the source with all
relevant information received from the consumer. CRAs must review and
consider all relevant information provided by the consumer in conducting
the reinvestigation. CRAs must delete or modify information that is
found to be inaccurate or incomplete, or that cannot be verified. CRAs
must complete the reinvestigation within 30 days, or within 45 days if the
dispute is based on a free annual credit report. CRAs must send a
consumer written results of the reinvestigation and a credit report that is
based on the consumer's file as that file is revised as a result of the
reinvestigation. 15 U.S.C. § 1681i(a).

134.  The policies and procedures of TRANS UNION do not ensure compliance with these provisions of the FCRA.

135.  TRANS UNION negligently failed to comply with the requirements of the FCRA.

136.  As a result of TRANS UNION's failure to comply with the requirement of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities, for which Plaintiff seeks damages in an amount to be determined by a jury.

137.  Plaintiff requests attorneys' fees pursuant 15 U.S.C. § 1681o(a).

## COUNT ELEVEN: FAIR CREDIT REPORTING ACT WILFUL NONCOMPLIANCE BY DEFENDANT TRANS UNION

138.  TRANS UNION willfully failed to comply with the requirements of the FCRA, including but not limited to, 15 U.S.C. §§ 1681e and 1681i.

139.  As a result of TRANS UNION's failure to comply with the requirement of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to

receive credit, damage to reputation, invasion of privacy, emotional

distress, and interference with Plaintiff's normal and usual activities, for

which Plaintiff seeks damages in an amount to be determined by a jury.

140.   Plaintiff is entitled to punitive damages in an amount to be determined by

the jury.

141.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## JURY TRIAL DEMAND

142.   Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT JUDGMENT

BE ENTERED AGAINST DEFENDANTS AND IN FAVOR OF PLAINTIFF,

AS FOLLOWS:

a)  That Plaintiff be awarded actual, statutory, punitive, exemplary and treble

damages;

b)  That Plaintiff be awarded costs and the expenses of litigation including a

reasonable attorney fee; and

c)  That the Court grant such further and additional relief as is just in the

circumstances including the removal of the NCC tradeline from Plaintiff's

credit files.


Respectfully submitted,

by: /s/ James M Feagle
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street
Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax


Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
kskaar@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax